IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

Civil Action No. 5:23-cv-00084-KDB-SCR

| | |
|---|---|
| **THEODORE H. CORRIHER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) **AMENDED COMPLAINT** |
| | ) |
| | ) |
| **RICHLAND DIVERSIFIED** | ) |
| **INDUSTRIES, INC. et al.,** | ) |
| | ) |
| **Defendants.** | ) |

Plaintiff Theodore H. Corriher, by and through the undersigned counsel, complaining of Defendants (i) Personal Representative of The Estate of Jimmie D. Dorris, individually and D/B/A PlayCraft Pontoon Company, PlayCraft Pontoon Company, PlayCraft Boats, Richland Diversified Industries, Inc., All Family Craft, Inc., Charger Deck Boat, Inc., Charger Boats, Richland Boat Company, and Richline Boats (collectively "Manufacturer"), and (ii) B & B Marine II, LLC, Stephen Brink, individually and D/B/A Marty's Marine, and Richard C. Ball, individually and D/B/A Marty's Marine (collectively "Dealer"), alleges and says as follows as his Amended Complaint:

1. Plaintiff is a citizen and resident of Catawba County, North Carolina.

2. Upon information and belief, Jimmie D. Dorris ("Mr. Dorris") was a citizen and resident of Camden County, Missouri who did business under the fictious name PlayCraft Pontoon Company pursuant to a Registration of Fictitious Name filed with the Missouri Secretary of State on December 8, 2014 and renewed on December 10, 2019. PlayCraft Pontoon Company does business in various states, including selling boats to customers in North Carolina as in this case.

3. An estate has been opened for Mr. Dorris in Camden County, Missouri, pursuant to the Petition to Require Administration filed in the Probate Division of the Circuit Court of Camden County, bearing case number 23CM-PR00061, and incorporating by reference a claim against Mr. Dorris's estate.

4. Upon information and belief, PlayCraft Pontoon Company also operates as a corporation, doing business in various states, including selling boats to customers in North Carolina as in this case. As of the date of the filing of this lawsuit, PlayCraft Pontoon Company has been assigned a Manufacturer Identification Code ("MIC") of "PLF" by the Boating Safety Division of the United States Coast Guard.

5. Upon information and belief, PlayCraft Pontoon Company also operates under the name PlayCraft Boats, which does business in various states, including selling boats to customers in North Carolina as in this case.

6. Upon information and belief, Richland Diversified Industries, Inc. is a corporation organized under the laws of the state of Missouri pursuant to filings with the Missouri Secretary of State, and is another name under which PlayCraft Pontoon Company conducts business.

7. Upon information and belief, All Family Craft, Inc. is a corporation organized under the laws of the state of Missouri pursuant to filings with the Missouri Secretary of State, is the parent company for PlayCraft Pontoon Company, and is another name under which PlayCraft Pontoon Company conducts business. As of the date of the filing of this lawsuit, All Family Craft, Inc. has been assigned a MIC of "CDG" by the Boating Safety Division of the United States Coast Guard.

8. Upon information and belief and pursuant to filings with the Missouri Secretary of State, Charger Deck Boat, Inc. is the previous name for All Family Craft, Inc., and is the name

under which All Family Craft, Inc. does business, according to the database maintained by the Boating Safety Division of the United States Coast Guard, and sells boats, doing business in various states, including selling boats to customers in North Carolina as in this case.

9. Upon information and belief, Charger Boats is the previous name for Charger Deck Boat, Inc., and is a related entity through which PlayCraft Pontoon Company and/or PlayCraft Boats manufactures and sells boats, doing business in various states, including the manufacture of boats for sale to customers in North Carolina as in this case.

10. Upon information and belief, Richland Boat Company is a Missouri company that is a related entity through which PlayCraft Pontoon Company and/or PlayCraft Boats manufactures and sells boats, doing business in various states, including the manufacture of boats for sale to customers in North Carolina as in this case.

11. Upon information and belief, Richline Boats is the former name of All Family Craft Inc., and is a Missouri company through which PlayCraft Pontoon Company manufactures and sells boats, doing business in various states, including the manufacture of boats for sale to customers in North Carolina as in this case.

12. Defendant B&B Marine II, LLC is a Missouri Limited Liability Company with its principal place of business in Osage Beach, Missouri, but which also markets and sells boats in other states, including the boat sold to Plaintiff in North Carolina in this case. Upon information and belief, B&B Marine II, LLC markets and sells boats, including the one purchased by Plaintiff, through one of its divisions, Marty's Marine. "Marty's Marine" is, in turn, registered with the Missouri Secretary of State's Office as a Fictitious Name under which Defendants Richard C. Ball and Stephen Brink do business.

13. Upon information and belief, Richard C. Ball is a citizen and resident of Cooper

County, Missouri, an owner of Marty's Marine, and does business under the same name.

14. Upon information and belief, Stephen Brink is a citizen and resident of Adams County, Illinois, an owner of Marty's Marine, and does business under the same name.

15. On or about April 1, 2020, Plaintiff purchased a 2020 PlayCraft Powertoon X-Treme 3000 Pontoon boat (the "Boat") from Dealer via Marty's Marine.

16. The Boat was manufactured by Manufacturer.

17. This transaction was in interstate commerce, with the Boat being delivered by Defendants to Plaintiff in Catawba County, North Carolina on or about April 19, 2020.

18. The individual who delivered the Boat to Plaintiff identified himself as "Phillip," and an employee of Marty's Marine. Although he was supposed to provide a demonstration of the Boat's operations, he failed to do so.

19. At no time prior to the sale did any Defendant disclose that the Boat had any manufacturing defects or unusual post-manufacturing modifications, or that the Boat could not be safely operated.

20. No Defendant disclosed latent defects in the Boat, which were not observable upon an initial inspection, including but not limited to: a center pontoon installed off of center; the front and side lifting strakes being out of alignment; and improper welding on one or more of the pontoons.

21. Upon the first attempted use of the Boat on or about April 24, 2020, within a few days of delivery, various performance issues related to these defects and post-manufacture modifications arose. For example, the trim on the throttle did not work evenly, and the Boat leaned and pitched in an unsafe fashion.

22. Subsequently, Plaintiff was physically ejected (on multiple occasions) into Lake

Norman while operating the Boat in accordance with its intended use.

23. The Boat was unsafe to operate in the condition in which it was sold to Plaintiff.

24. At no time prior to Plaintiff purchasing the Boat did any Defendant disclose to Plaintiff that the vessel was unsafe to operate in the condition in which it was sold to Plaintiff, or that it suffered from any of the defects alleged herein.

25. Very soon after purchasing the Boat and determining that its condition had been misrepresented to and/or concealed from him, Plaintiff contacted Manufacturer and Dealer to seek assistance and, if unsuccessful, to revoke acceptance of the Boat.

26. Initially, Manufacturer promised to send a representative to have the Boat picked up from Plaintiff and "get everything right," and then Plaintiff could travel to Manufacturer's place of business in Missouri to test drive the Boat after repairs to make sure that Plaintiff was satisfied with the repairs.

27. Nearly two years later, in or around February 2022, Manufacturer eventually retrieved the Boat from Plaintiff and indicated it would inspect the vessel and return it to Plaintiff after inspection. Included with the Boat at the time Manufacturer retrieved it were written materials provided to Plaintiff with the Boat upon purchase, including an owner's manual, registration, warranty documents, and related sales documents.

28. Several months later, in May 2022, the Boat was returned to Plaintiff by Manufacturer, but it was missing safety equipment, and its defects had not been repaired. Moreover, Manufacturer failed to return to Plaintiff the written materials related to the Boat that Manufacturer had taken possession of in February 2022 (*i.e.*, owner's manual, registration, warranty documents, and related sales documents).

29. Defendants unreasonably disavowed any responsibility for, and refused to do

5

Case 5:23-cv-00084-KDB-SCR   Document 33   Filed 10/17/23   Page 5 of 14

anything to remedy, the Boat's defects.

30. Despite having been provided evidence of these defects, and the fact that material aspects of the Boat had not been disclosed to Plaintiff prior to purchase, and despite the fact that the condition of the Boat constitutes a hazard to life and limb, Defendants have taken no action to repair the Boat or follow through on their representations to Plaintiff.

31. As a result of the actions of Defendants, Plaintiff now has an unsafe, inoperable Boat, and thus has lost the entire value of the purchase price he paid.

## FIRST CAUSE OF ACTION
### (Intentional Misrepresentation)

32. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

33. As alleged above, at no time prior to Plaintiff's purchase of the Boat did any Defendant disclose to Plaintiff that the vessel was unsafe to operate in the condition in which it was sold to Plaintiff, or that it suffered from any of the defects alleged herein.

34. Upon information and belief, Defendants knew of said defects, given their respective roles in the transaction, familiarity with the Boat, and the nature of the concealed defects and modifications.

35. Defendants thus misrepresented to Plaintiff, by omission, material information regarding the defective condition of the Boat and, upon information and belief, did so for the purpose of deceiving Plaintiff.

36. Plaintiff reasonably relied upon the veracity of Defendants and upon the lack of disclosure of these defects in deciding to purchase the Boat.

37. Plaintiff's reliance was to his detriment in purchasing a Boat with concealed defects that rendered it unsafe and inoperable.

38. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been damaged in an amount in excess of $25,000.

39. In the alternative, Plaintiff is entitled to rescind the purchase and recover the entire purchase price.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
### (In the Alternative)

40. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

41. As described more fully above, Defendants misrepresented to Plaintiff, by omission, material information regarding the defective condition of the Boat.

42. To the extent that Defendants lacked actual knowledge of the Boat's defects and post-manufacture modifications, Defendants should have known of the Boat's defects and post-manufacture modifications, and they failed to discover and disclose said defects to Plaintiff.

43. Defendants owed a duty of care to Plaintiff.

44. Defendants breached that duty by negligently failing to discover and disclose the Boat's defects and post-manufacture modifications.

45. Plaintiff reasonably relied upon the veracity of Defendants and upon the lack of disclosure of these defects in deciding to purchase the Boat.

46. Plaintiff's reliance on Defendants' representations and lack of disclosures was to his detriment in deciding to purchase a Boat he thought was safe and operable but which proved to be unsafe and inoperable.

47. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been damaged in an amount in excess of $25,000.

48. In the alternative, Plaintiff is entitled to rescind the purchase and recover the entire purchase price.

### THIRD CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices)

49. The preceding paragraphs 1 through 39 are re-alleged and incorporated by reference as if fully set forth herein.

50. The conduct of Defendants, as alleged herein, constitutes unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes.

51. Specifically, as alleged herein upon information and belief, Defendants knew of material defects which rendered the Boat unsafe and inoperable, but did not disclose such defects to Plaintiff prior to his purchase of the Boat.

52. As alleged herein, Defendants acted to manufacture and market the Boat in interstate commerce.

53. The unfair and deceptive acts of Defendants are in or affecting commerce and proximately caused injury to Plaintiff in causing Plaintiff to purchase a Boat he believed, based on Defendants' marketing and lack of disclosures, to be safe and operable, but which proved to be unsafe and inoperable due to material defects concealed by Defendants.

54. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been damaged in an amount in excess of $25,000.

55. In the alternative, Plaintiff is entitled to rescind the purchase and recover the entire purchase price.

56. Plaintiff is entitled to treble his damages and attorneys' fees pursuant to N.C. Gen Stat. § 75-16 and 75-16.1.

# FOURTH CAUSE OF ACTION
## (Breach of Warranty – Implied Warranty of Merchantability)

57. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

58. Defendants are merchants with respect to recreational boats such as the Boat purchased by Plaintiff herein.

59. The Boat was subject to implied warranties of merchantability, as defined in N.C. Gen. Stat. § 25-2-314, running from Defendants to Plaintiff.

60. An implied warranty that the Boat was merchantable arose by operation of law as part of the purchase of the Boat.

61. Defendants breached the implied warranty of merchantability in that the Boat was not in merchantable condition when the Plaintiff purchased it, or at any time thereafter, and the Boat is unfit for the ordinary purposes for which such vessels are used.

62. As described herein, Plaintiff reported the Boat's defective condition to Defendants within a reasonable time following his discovery thereof.

63. Plaintiff could not reasonably have discovered the Boat's defects prior to Plaintiff's acceptance of the Boat.

64. Had Plaintiff known of the Boat's defects prior to the time of purchase, he would have either not purchased the Boat or would have paid a lower price for it.

65. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been injured, including without limitation through his loss of use of the Boat, and the diminution in value of the Boat due to the defects rendering it unsafe and inoperable.

66. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been damaged in an amount in excess of $25,000.

## FIFTH CAUSE OF ACTION
### (Breach of Warranty – Implied Warranty of Fitness for Particular Purpose)

67. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

68. Plaintiff purchased the Boat for use as a high-performance speed pontoon boat to be operated at moderate and high speeds, and to accelerate and decelerate relatively quickly.

69. Based upon the nature of the Boat and the manner in which it was marketed as a high-performance speed pontoon boat, Manufacturer and Dealer knew or had reason to know that the Boat was being purchased by Plaintiff to be operated as such, which included operating the Boat at moderate and high speeds, and accelerating and decelerating relatively quickly.

70. Plaintiff relied upon the skill and knowledge of Defendants in deciding which boat to purchase.

71. The Boat was subject to implied warranties of fitness for a particular purpose, as defined in N.C. Gen. Stat. § 25-2-315, running from Defendants to Plaintiff.

72. As a result of the circumstances of the sale, an implied warranty arose, by operation of law, that the Boat was fit for Plaintiff's purposes as stated herein.

73. As described herein, Plaintiff is not able to operate the Boat as a high-performance speed pontoon boat. The Boat does not operate properly or safely, even at moderate speeds, and does not operate in a straight or level fashion, particularly when decelerating.

74. Defendants thus have breached the implied warranty of fitness for a particular purpose for which Plaintiff purchased the Boat.

75. Plaintiff could not reasonably have discovered the Boat's defects prior to Plaintiff's acceptance of the Boat.

76. Had Plaintiff known of the Boat's defects prior to the time of purchase, he would

have either not purchased the Boat or would have paid a lower price for it.

77. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been injured, including without limitation through his loss of use of the Boat, and the diminution in value of the Boat due to the defects rendering it unsafe and inoperable.

78. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been damaged in an amount in excess of $25,000.

## SIXTH CAUSE OF ACTION
### (Breach of Warranty)

79. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

80. As described herein, the Boat was initially delivered to Plaintiff, upon his purchase thereof, with various sales-related documents, including a written warranty.

81. As described herein, Plaintiff provided these sales-related documents, including the written warranty, to Manufacturer in or about February 2022, when Manufacturer retrieved the Boat for inspection and evaluation.

82. When the Boat was returned to Plaintiff by Manufacturer, the sales-related documents, including the written warranty, were not in the Boat or otherwise returned to Plaintiff.

83. Upon information and belief, the Boat is subject to a written, express warranty, which was part of the basis of the bargain between Plaintiff and Defendants.

84. As described herein, Plaintiff submitted the Boat to Manufacturer for inspection and repairs, but Manufacturer failed to make repairs to cure the Boat's defects.

85. Upon information and belief, the condition of the Boat does not conform with the written warranty.

86. Defendants have been given reasonable opportunities to cure the Boat's defects,

but have failed to do so.

87. Defendants have thereby breached the warranty.

88. Plaintiff could not reasonably have discovered the Boat's defects prior to Plaintiff's acceptance of the Boat.

89. Had Plaintiff known of the Boat's defects prior to the time of purchase, he would have either not purchased the Boat or would have paid a lower price for it.

90. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been injured, including without limitation through his loss of use of the Boat, and the diminution in value of the Boat due to the defects rendering it unsafe and inoperable.

91. As a direct and proximate result of the actions of Defendants alleged herein, Plaintiff has been damaged in an amount in excess of $25,000.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract)**
**Against Dealer**

92. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

93. Plaintiff entered into a contract with Dealer pursuant to which Dealer was to deliver Plaintiff a boat in a safe, working condition.

94. As described herein, the Boat was not delivered in a safe, working condition.

95. The Boat remains inoperable and has not been restored to working condition.

96. Dealer's failure to deliver to Plaintiff a boat in a safe, working condition constitutes a breach of the parties' contract.

97. As a result of Dealer's breach, Plaintiff has suffered injury and has been damaged in an amount in excess of $25,000.

98. In the alternative, Plaintiff is entitled to revoke acceptance of the Boat delivered and to recover the full purchase price.

WHEREFORE, Plaintiff prays the court for entry of judgment against Defendants, jointly and severally, as follows:

a. award Plaintiff damages in an amount greater than $25,000, together with interest thereon at the legal rate;

b. award Plaintiff treble damages pursuant to N.C. Gen Stat. § 75-16 and 75-16.1 under the Third Cause of Action;

c. under the First, Second, Third, and Seventh Causes of Action, award Plaintiff the return of the full purchase price he paid for the Boat, together with interest thereon at the legal rate;

d. assess attorneys' fees and the costs of this action against Defendants;

e. trial by jury on all issues so triable; and

f. award Plaintiff any and all other relief the Court deems just and proper.

This the 17th day of October, 2023.

**THEODORE H. CORRIHER**

By: /s/ Shawn A. Copeland
Shawn A. Copeland (NC Bar #36345)
COPELAND RICHARDS, PLLC
PO Box 430 *(all U.S. mail)*
215 S. Mail Street, Suite 301
Davidson, NC 28036
PHONE: 704.439.4441
FAX: 704.439.4413
EMAIL: *shawn@copelandrichards.com*

***Counsel for Plaintiff Theodore H. Corriher***

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **AMENDED COMPLAINT** was filed this _____ day of October, 2023, with the Clerk of Court using the CM/ECF system, which will provide notification and a copy to the following:

> Jason R. Harris, Esq.
> Cranfill Sumner LLP
> 5535 Currituck Drive, Suite 210
> Wilmington, NC 28403
> P.O. Box 1950
> Wilmington, NC 28402
> Phone: 910.777.6063
> Fax: 910.777.6142
> Email: *jharris@cshlaw.com*

***Counsel for Defendants Personal Representative of The Estate of Jimmie D. Dorris, Individually and D/B/A PlayCraft Pontoon Company, PlayCraft Pontoon Company, PlayCraft Boats, Richland Diversified Industries, Inc., All Family Craft, Inc., Charger Deck Boat, Inc., Charger Boats, Richland Boat Company, and Richline Boats***

> Ned A. Stiles, Esq.
> Stiles Byrum & Horne, LLP
> The Arlington, Suite 650
> 325 Arlington Avenue
> Charlotte, NC 28203
> Phone: 704.332.2830
> Fax: 704.332.3281
> Email: *nstiles@sbhlaw.net*

***Counsel for Defendants B & B Marine II, LLC, Stephen Brink, individually and D/B/A Marty's Marine, Richard C. Ball, individually and D/B/A Marty's Marine***

> By: /s/ Shawn A. Copeland
> Shawn A. Copeland (NC Bar #36345)
>
> ***Counsel for Plaintiff***